you may proceed. Thank you, Your Honor. Good morning, Your Honors, and may it please the Court. My name is Mark Ebert, and I represent Mr. Lemerle Johnson. I'm going to make my prepared statement very brief because this is not a complicated case, and although the State characterizes it as an issue of first impression, it's actually one that both the Supreme Court and the Ninth Circuit have established the guiding principles for pretty clearly. Mr. Johnson alleges, and the proceedings before the State trial court support his allegations, that he discovered and revealed a murder plot, revealed the plot to the authorities while he was awaiting trial on his own charges, that he agreed to cooperate with the State, and that he was threatened and intimidated by police and the people he was testifying against to recant his testimony. After that, he recanted his recantation out of fear. We recanted his recantation. Counsel, I think we understand the factual background. The real question, it seems to me, is that you're arguing actual innocence, are you not? Isn't that the standard you have to meet? No, Your Honor. Mr. Johnson has acknowledged that he was not innocent of the underlying crime that he was charged with. Well, isn't that the end of the story? Isn't that the end of the story in this context? I know, Your Honor, because I think the actual innocence phrase is a bit of a misnomer in that, yes, that is what happened in Schlupp, and that is what's certainly carved out as an exception to the procedural bars under that theory. However, the actual issue is whether there is a miscarriage of justice sufficient that undermines the Court's confidence in the outcome. Well, even applying the the miscarriage of justice standard, where you have an admission of guilt, isn't that the end of the story? No, Your Honor. Again, I would point, for example, to the case of Sawyer, which is cited in my brief, a U.S. Supreme Court case where the issue was whether or not the death penalty should have been applied. There's no question, at least in that case, about whether that person was innocent of the crime. It only went to the justness of the penalty. And I think that the subsequent cases after Schlupp, and in particular I'm referring to this Court's case in Majoy v. Rowe, as well as the Sawyer house – Sawyer and house cases that I cited, have made it pretty clear that a miscarriage of justice, which, of course, can mean a lot more than actual innocence, both in lay terms and in common legal usage. Well, now, the Stevens passage in Sawyer, of course, has never been adopted by the Supreme Court, has it? That was a concurrence that was joined in by only three justices. However, it was not rejected by the majority in that case either. The majority in that case did not reach that issue. What happened was they found something other than actual innocence, which they found was a miscarriage of justice, that is the – in Sawyer, and then a very clear statement in both McCleskey and Schlupp that this very narrow procedural circumstances appears to be confined to actual innocence. So we don't seem to have a Supreme Court, you know, controlling Supreme Court authority that miscarriage of justice can go beyond actual innocence. And isn't that – that's the hole you need to fill, but you can't fill it with – I can't see how you can fill it with Supreme Court authority. Okay. Well, first of all, this is a question of statute of limitations. We're talking about de novo review. We're not talking about the whole general ADPA statute, statutory standards. Secondly, I would argue that the Schlupp discussion, which the State relies on, where they talk about limiting it to actual innocence, is referring, in fact, number one, it's referring to the prior cases that they're talking about in that section of the opinion. Number two, that that goes against and would be inexplicable, in fact, if you interpret it the way the State's interpreting it, in light of the fact that Schlupp indicated that the claim of innocence, on the other hand, this is at page 314, is procedural rather than substantive. His constitutional claims are based not on his innocence, but rather on his contention that the ineffectiveness of his counsel, which is the contention here, are one of them, and the withholding of evidence by the prosecution denied him the full panoply of protections afforded to criminal defendants by the Constitution. And also, it would go against any reasonable interpretation of the language that the actual innocence of Mr. Schlupp was something that brought him within the narrow class of cases that fits within the miscarriage of justice exception. I mean, a class of cases, by definition, includes more than one. Kagan. If you go some, maybe seven pages beyond where you are, the Court is talking about trying to ensure that this is, you know, how to tie up the fact that this is a rare and extraordinary circumstance. And then the Court concludes this Court explicitly tied the miscarriage of justice exception to the Petitioner's innocence. So that led me to think that they were basically kind of tying up the knot. Now, maybe I need you to tell me why that's not the case. Yeah. Again, and maybe I wasn't clear, or maybe Your Honor disagrees. I don't know. But I think that they were referring to the prior cases that they were discussing at that time. I think that other language in Schlupp makes it clear that that is not the only situation. And I also think that there are subsequent cases, and now I'm talking about House v. Bell and Sawyer v. Whitley, both Supreme Court cases, and also this Court's decision in Majoi v. Rowe, where it becomes clear after Schlupp that the issue is not the actual guilt or innocence of the Petitioner. The issue is, in fact, Majoi v. Rowe, this Court says, a Petitioner need not show that he is actually innocent or of the crime he was convicted of committing. Instead, he must show that a court cannot have confidence in the outcome of the trial or in Sawyer, the penalty, or in Boosley or Griffin, the guilty plea. So now I'm having a little trouble when you go to Majoi, because basically there they talk about showing, in light of all the evidence, that it's more likely than not that no reasonable juror would have found the individual guilty. But then this gentleman says, you know, I did it and I can never undo it. And I'm having some intellectual collision there between his statement and the Majoi case. Maybe you can help me out on that. Well, again, subsequent cases such as Griffin and Boosley, which are cited in my brief, have applied it to things such as guilty pleas. Sawyer applied it to the penalty imposed. So it's not just his guilt of the underlying crime. Also, some of his substantive underlying crime. Okay. So if we were to stop there, I guess there's two ways to look at that. You could say, well, it's not just the underlying crime if there's something else that's implicated, like the penalty or the guilty plea, so that you're saying there's categories beyond. Yes. And also, both the underlying habeas claims in this case, as was true in one of the cases I just cited, I think it was Majoi, includes ineffective assistance of counsel and counsel having an actual and disabling conflict. The closest case that I've found to what you appear to be arguing is this Second Circuit case, Spence. Have you looked at it? Yes. And the Second Circuit comes right out and says that this miscarriage of justice is big enough to swallow up where there's actual innocence of the factor that caused the increased sentence. Well. Well, whether by clear and convincing evidence, defendant has shown that he is actually innocent of the act on which his harsher sentence was based. And if that were a U.S. Supreme Court case, it seems to me you'd have a pretty strong argument. But has the Supreme Court said anything close to what the Second Circuit said in Spence? I'm not aware of the Supreme Court saying anything other than what's in Schluck, which we've already discussed. I don't want to characterize your argument. Yeah. And I would have thought that one of your arguments might have been that he's actually innocent of the factor that caused his increased sentence because he was forced to do it because of what the government did to him. But I can't find Supreme Court authority that says that. Isn't that what we have to have? No, because, again, this is a de novo issue having to do with the statute of limitations, not the general ADPA statutes. But I would go back not to the Second Circuit, but to Majoi v. Roe, which I think sets forth what this Court believes and certainly at a minimum is leaning towards in this situation. And I have 13 seconds, which I'd like to save for rebuttal. All right. You may do so, counsel. We'll hear from the government. May it please the Court. Peggy Ruffray for Respondent. Your Honor, the Petitioner in this case is asking for an unprecedented and standardless expansion of a way to avoid the statute of limitations. No court has ever held that the miscarriage of justice exception to some kind of barred claim means anything but actual innocence, at least in some context. And the Sixth Circuit? I'm sorry? Isn't the Sixth Circuit held that miscarriage of justice goes beyond actual innocence? Well, I think only in the context of the guilty plea or the death penalty, those types of situations. So it's not accurate to say that no court has held that actual innocence is the only standard? Well, it's ultimately tied to actual innocence in some context. No court has ever said that the miscarriage of justice exception can encompass the claims, just if you think that the claims are good, which is essentially what the Petitioner is asking for in this case. He's saying I have some good claims, which we're not conceding, of course. We've never answered those or even investigated them. But he's saying my underlying claims are good, and so that in and of itself should override the statute of limitations, even though I admit that I am guilty of all crimes. How much investigation does it take to discover that after a jailhouse snitch has told the prosecution of a murder plot that the prosecutor puts the man back in the same cell with one of the people he testified against? Well, Your Honor, I think there was some sheriff's deputy investigation done at the time. It was very limited. It did not, in fact, corroborate all of the allegations that Mr. Johnson has made. But for purposes of the issue that's before the Court now, the question is whether this petition was timely. And as a matter of resources, when we move to dismiss a petition as untimely, we don't answer the merits of the claims or conduct the kind of factual investigation that might be required in this case if we were going to investigate the merits. And basically, all of the merits here are outside the record, except for a very few small factual records. So it would, I think, be quite a difficult task in this case to try to determine exactly what happened and what the motivations were and so forth from events from 15 years ago. Our jurisprudence for motion to dismiss is simply whether this was timely. And the Majoi case, the Court considered whether there would be some kind of miscarriage of justice exception, although it didn't hold it. But this Court found that if it did apply, it would be governed by the Schlumpfi-Dello standards. Those are explicitly tied to actual innocence. The Majoi court remanded for determination to see if the petitioner could show that he was actually innocent under that high standard. Roberts. Let's suppose that the petitioner in this case was charged with perjury for his recantation. Yes. And untimely petition. And the facts are clear that after he first testified, the government put him in a cell with the person he testified against, one of them, and that his life was threatened and he recanted the testimony, and based on that recanted testimony, he was charged with perjury. Would he be able to satisfy Schlumpf? Well, no, because he has said, I kidnapped Mr. Futz, I ---- I'm asking you a hypothetical question. And my answer is that he has admitted his guilt of the underlying crime. But if the habeas petition were addressed at a perjury conviction, based on those facts, would Schlumpf apply? In other words, the kidnapping is out of the picture. He's being ---- Oh, I see. He's only charged ---- On appeal, the petition is simply addressed to a charge of perjury. And he's saying, I was compelled to recant my testimony because of government misconduct. Would that satisfy the Schlumpf exception? I'm not sure, because I'm not sure of the scope of the hypothetical. If all other facts were the same, the reason that Mr. Johnson had a three-and-a-half year delay before filing his Federal habeas petition, we know because he has said this, is he decided that he wanted to gather records. If I may. This is his own words. He says he's referring to himself in the third person. It's at ER 30. He concedes that he knew the basic factual predicate of his claim and was seeking official documentation to support them in skeptical courts when criminal defendants raised such claims involving law officials. So it was his choice, instead of pursuing a timely Federal habeas petition, to try to get some records that he thought would help support his claim. And that was an election ---- Sotomayor, if I may, I would like to ask you about Schlumpf-Vidello's underlying the claim. We're here on the theory that because he has admitted his guilt of the underlying offense of kidnapping, he cannot, under any circumstances, be excused for his untimely filing, right? Correct. And I think that is absolutely compelled by Schlumpf-Vidello. Not only the ---- But you wouldn't extend Schlumpf to my hypothetical if we were here on a charge of perjury based on his recantation. Well, it would depend on the ---- looking at the specific facts of his testimony. It appears that he testified one way, then he recanted, and then he recanted his recantation. You'd have to look at whether that qualified as perjury to determine whether he could make a claim under those circumstances of actuality. Let's assume that absent the compulsion, it would be. Testimony A is black, testimony B is white. And I'm not sure if there is a defense of duress to perjury. I'm just not familiar enough with all the parameters of the California law. But if you're in the cell with the man, you go out to testify, you come back, you're with the guy, he says, if you don't change your testimony, I'm going to kill you, that that's not conceivably proof of actual innocence of the perjury charge? It's possible. But as I said, I'm not familiar. So if it's possible it applies to perjury, why wouldn't it apply here? Because he has said, I am guilty of this particular underlying crime, which is not perjury, it's kidnapping for ransom. But it's the reason he got the increased sentence. Correct? It's the reason, I'm not sure. The government backed out of the plea agreement after he recanted, right? Correct. Now, the plea agreement did require him to testify truthfully at all times. Those literal words are in the plea agreement. And I think that Mr. Johnson would have to agree that he did not testify truthfully at all times since he did change his story in some way. You know, whether at this point he would say that it was story A or story B, at some point something wasn't truthful. And that was approved by the trial court judge when the prosecutor moved to rescind the plea agreement. That wasn't all done just between the parties, that was actually approved by a trial court judge. So presumably there was some determination that he did, in fact, breach that plea agreement. In my very short time I have left, I'd like to just focus on, Schlupp not only explicitly tied the miscarriage of justice exception to innocence, which is a quote. It also said, without any new evidence of innocence, even the existence of a conceitedly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim. It's clearly tied to actual innocence. If it were not, then this would be a totally standardless exception. Because every petitioner is going to argue that they have a good claim, or that it would be a miscarriage of justice in a layperson's sense, not to hear their claim on the merits. It would mean that the, it would be a huge expansion of resources for federal courts, because we would not have only be moving to dismiss as untimely, we'd have to brief the merits of the claims as well. The courts would have to be deciding both the merits and whether it was untimely, which obviates the purpose of the statute of limitations and eviscerates the entire statute. I don't think that the House and Sawyer cases compel any kind of a different result. House was an actual innocence case. That was the question there. Sawyer involved something of an inconvenient fit, actual innocence of the death penalty, but still in terms of actual innocence. So there's simply nothing that would support any kind of an expansion of the way to avoid the statute of limitations that has been suggested here. Roberts. Thank you, counsel. Mr. Eibert, you have a few seconds. Use them wisely. I'll make as many of four points as I can in that time. The first is that Majoy, Sawyer, and House, two of which are Supreme Court cases, all subsequent to Schlupp, have indicated that actual innocence of the underlying crime is not required. This isn't we obviously don't have a case with these facts. These are unusual facts, but they are facts that undermine the Court's confidence in the outcome. Your Honor is correct that he would not have been at trial and he would not have gotten nearly as long a sentence if his plea agreement had been honored, if he hadn't had the problems that he had, both with State agents and with his own counsel. Second, much of the merits are in the record. The record shows that the police investigated, that other policemen admitted making at least some of the threats that Mr. Johnson indicated that they made, that the Court accepted that he was in danger and had to be moved to a different jail, and that the prosecutor admitted that he had failed to protect his witness and that his witness, that it was his fault, but that his witness had told the truth in the end, which I don't think is in doubt. Third, the government argues that there was a three-and-a-half-year delay in filing his Federal petition. Actually, it was a lot less than that. Most of that time, not enough of it, but most of that time was spent filing a multitude of pro se State habeas petitions. And finally, I don't see this as being a floodgates issue. Scalia, he got credit for some of that. He got tolling, didn't he, for some of that time? He did not get enough tolling. Well, he got some, is my point. He was denied equitable he was denied both equitable and statutory tolling sufficient to bring him within the statute of limitations. I cannot recall if some little portion of it was. But finally, I just want to say this is not a floodgates issue. This is an unusual case. And I think that if the Court follows the language of Majoy and the other Supreme Court cases that I've suggested, that the courts will very quickly determine what is and is not falls within the miscarriage of justice, and that that's how that will work itself out. Thank you, counsel. The case just argued will be submitted for decision.
judges: O'scannlain, Hawkins, McKeown